710 January 28, 2026 No. 46

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of F. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. D.,
*Appellant.*

Douglas County Circuit Court
23JU00801; A188125 (Control)

In the Matter of V. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. D.,
*Appellant.*

Douglas County Circuit Court
23JU00802; A188126

Ann Marie Simmons, Judge.

Submitted November 20, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this consolidated juvenile dependency case, father appeals from judgments in which the juvenile court changed the permanency plans for his children F and V, aged six and seven at the time of the permanency hearing, from reunification to adoption. In his first four assignments of error, father challenges the court's rulings that his progress toward reunification was insufficient and changing the children's plans away from reunification. In his fifth through eighth assignments of error, father challenges the court's determinations that no compelling reasons existed not to change the children's permanency plans to adoption and orders to change the plans to adoption. We affirm.

Father has not requested that we review *de novo*, and we do not exercise our discretion to engage in such review in this case.[1] We are therefore bound by the juvenile court's findings of historical fact—including what reunification efforts the Oregon Department of Human Services (ODHS) made and what actions the parent took—if there is any evidence in the record to support them. *Dept. of Human Services v. Y. P.*, 372 Or 133, 151, 546 P3d 255 (2024). We review the juvenile court's determinations that ODHS's efforts have been reasonable, that the parent's progress is insufficient, and that there is no compelling reason to forgo a plan of adoption for errors of law. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 56-57, 567 P3d (2018) (compelling reasons determination); *Dept. of Human Services v. T. R. P.*, 344 Or App 375, 377, 580 P3d 365 (2025) (reasonable efforts and insufficient progress determinations).

Except in specific circumstances not applicable here,[2] the juvenile court is authorized to change a child's

---

[1] *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (providing for the exercise of that discretion only in "exceptional cases"); ORAP 5.40(8)(d) (identifying nonexclusive considerations that may be relevant to our decision whether to exercise *de novo* review).

[2] Under ORS 419B.340(5), the juvenile court may relieve ODHS of its obligation to make reunification efforts in cases in which there are "aggravated circumstances," the parent has committed certain crimes, or the parent's rights to another child have been terminated.

permanency plan from reunification to adoption if the proponent of that plan change, typically and in this case ODHS, proves that ODHS's efforts to reunify the parent and child have been reasonable and that, despite those reasonable efforts, the parent's progress toward reunification has been insufficient. ORS 419B.476(2)(a); *Dept. of Human Services v. L. M. K.*, 319 Or App 245, 252, 246, 510 P3d 278 (2022). "[B]oth [ODHS's] efforts and a parent's progress are evaluated by reference to the facts that formed the bases for juvenile court jurisdiction." *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012). That is, the court may only rely on facts that are "explicitly stated or fairly implied by the jurisdictional judgment" in making its determinations regarding ODHS's reunification efforts and the parent's progress. *Id.* at 715-16.

ODHS's reunification efforts are "reasonable" when they "focus on ameliorating the adjudicated bases for jurisdiction" and "give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 138, 413 P3d 1005 (2018) (internal quotation marks omitted). A parent need not completely ameliorate the bases for dependency jurisdiction for their progress to be "sufficient." *Y. P.*, 372 Or at 146. Instead, a parent's progress is "sufficient" if it would make the child's safe return home possible, with or without continued services and support. *Id.* at 154. "Even if a parent has completed all services that have been required, evidence that a parent continues to engage in behavior that is harmful to a child supports a determination that the parent has not made sufficient progress to make it possible for the child to return home." *Dept. of Human Services v. G. N.*, 263 Or App 287, 297, 328 P3d 728, *rev den*, 356 Or 638 (2014).

When a juvenile court has determined to change a child's permanency plan away from reunification, its goal then is to select a plan "that is most likely to lead to a positive outcome for the child." *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183, 205 P3d 36 (2009). To that end, ORS 419B.476(5) requires the court to address certain issues in the judgment changing a child's permanency plan.

As relevant here, when a child's plan is being changed to adoption, ORS 419B.476(5)(d) requires the court to address whether any of the circumstances in ORS 419B.498(2) apply.

ORS 419B.498(2) lists reasons that ODHS may forgo or delay filing a petition to terminate parental rights in a dependency case, one of which is the existence of a "compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward." The statute provides some examples of compelling reasons, one of which is that "[a]nother permanency plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships." ORS 419B.498(2)(b)(B). The party arguing that a compelling reason exists bears the burden to prove it. *S. J. M.*, 364 Or at 53.

We disagree with father's contention that the juvenile court erroneously relied on facts extrinsic to the jurisdictional bases in making its permanency determinations and conclude that the juvenile court did not err in ruling that father had not made sufficient progress toward reunification with F and V and changing their permanency plans away from reunification. Jurisdiction was based on both parents' admissions that their "volatile behavior" "interfere[ed] with [their] ability to safely parent the child[ren]." There is evidence that, around the time the court asserted jurisdiction over F and V, parents' volatile behavior manifested in their relationships with each other and in their relationships with F and V. Although father participated in services and made some progress by the time of the permanency hearing, there is evidence that he continued to engage in volatile behavior, including in his interactions with F and V, who were particularly sensitive to that volatility given their own emotional and behavioral needs. There is also evidence that mother's volatile behavior with the children continued and that both parents' volatility interfered with them benefiting from services and receiving related feedback from providers.

We further conclude that that the juvenile court did not err in determining on the record before it at the permanency hearing that plans of adoption were best suited to

meet the health and safety needs of F and V and in changing their permanency plans to adoption. Although father contends that plans of guardianship would preserve the children's legal relationships with parents and each other, that is generally true in dependency cases. Father has not demonstrated that the evidentiary record compelled the conclusion that plans of guardianship, rather than adoption, were best suited to meet *all* of the children's needs. *Id.* (holding that the party arguing that a compelling reason to forgo a plan of adoption exists bears the burden to prove that is so).

Affirmed.